UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY BRINKMAN and VICTORIA BRINKMAN, | No. CV 10-04601-MHP |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | **Re: Plaintiff's Motion to Remand and Defendant's Motion to Transfer** |
| SCHWEIZER AIRCRAFT CORPORATION, a corporation; SCHWEIZER HOLDINGS, INC., a corporation; DOES ONE THROUGH FIFTY; DOE COMPANY ONE THROUGH FIFTY, | |
| Defendants, / | |

This action arises out of a November 2007 helicopter crash in Oregon that injured plaintiff Bradley Brinkman. In November 2009, Bradley and his wife Victoria ("plaintiffs") filed a complaint against Schweizer Aircraft Corporation and Schweizer Holdings, Inc. ("defendants") in the Superior Court of California, County of San Francisco. Defendants removed the action to this court on October 13, 2010 on the basis of diversity jurisdiction. Now before the court is plaintiffs' motion to remand the action to the San Francisco Superior Court. Plaintiffs claim that no diversity jurisdiction exists because all parties were citizens of New York at the time the action was filed. Also before the court is defendant's previously stayed motion to transfer this action to the District of Oregon. Having considered the arguments of the parties and for the reasons stated below, the court enters the following memorandum and order.

## BACKGROUND

This is an action for personal injury arising out of a November 21, 2007 accident in which plaintiff Bradley Brinkman sustained injuries after a crash in a helicopter manufactured by defendants. *See* Docket No. 15 (Notice of Removal), Exh. A (State Court Complaint). At the time of the accident, Bradley was a student at a vocational pilot school in Oregon. He and his wife Victoria Brinkman were living in a temporary residence in Oregon but it is undisputed that they maintained their California citizenship. Plaintiffs returned to California shortly after the accident, but after some financial difficulty relocated to New York in September 2009. In November 2009, plaintiffs filed this action in San Francisco Superior Court. Plaintiffs then relocated to Ohio in December 2009, and continue to live in Ohio. Defendants, corporations with their main place of business in New York, removed this action to federal court on the basis of diversity jurisdiction. They contend that plaintiffs were not domiciled in New York at the time of filing, and were therefore citizens of some other state, giving rise to diversity jurisdiction. Plaintiffs then filed this motion to remand to state court, arguing that diversity does not exist because at the time of filing, they were citizens of New York.

Plaintiff Bradley Brinkman moved with his parents to California in 1998 when he was in the tenth grade. He remained domiciled in the state until September 2009, *see* Docket No.15, Mot. (Affidavit of Bradley Brinkman) at ¶¶ 2-26, but from March 2004 to September 2007, Bradley was stationed in New York and did a 10-month tour in Afghanistan in the United States Army. *Id.* at ¶ 3. Bradley met Victoria in New York, and they were married there in October 2005. *Id.* at ¶ 4. After Bradley's discharge from the army in September 2007, plaintiffs moved with their son to California, where they lived with Bradley's parents. *Id.* at ¶ 6 & Affidavit of Victoria Brinkman at ¶ 3. Victoria acquired a California driver's licence and registered to vote in California. *See* Docket No. 28, Hunt Decl., Exh. 4 (Deposition of Victoria Brinkman) at 29-31. Soon thereafter, Bradley enrolled in the vocational pilot school, and plaintiffs relocated to temporary housing in Oregon, where they intended to stay for the duration of the school's nine-month curriculum. Affidavit of Bradley Brinkman at ¶¶ 7-11. During this time, Bradley maintained a California driver's license,

California vehicle registration, and California voter registration as well as a permanent address in California. *Id.* at ¶¶ 13-16 and Exhs. B, C, D, and E.  The helicopter crash occurred on November 21, 2007, and plaintiffs returned to Bradley's parents' home in California after several weeks of medical treatment in Oregon. Affidavit of Bradley Brinkman at ¶¶ 17-19.

Bradley Brinkman filed for bankruptcy in the Eastern District of California on September 21, 2009. Hunt Decl., Exh. 2 (Bankruptcy Petition).  Because of their financial difficulties, plaintiffs decided to move to New York. Affidavit of Bradley Brinkman at ¶¶ 25-42 and Exhs. E-K; Affidavit of Victoria Brinkman at ¶ 6-16.  Victoria relocated there with the couple's son on September 11, 2009, and Bradley followed on September 22, 2009 after selling their car in California. *Id.* at ¶ 26. Plaintiffs moved into a trailer located on Victoria's parents' property in LaFargeville, New York. *See* Docket No. 28, Hunt Decl., Exh. 3 (Deposition of Bradley Brinkman) at 3-4.  Plaintiffs purchased and registered a car in New York, rented a New York post office box on a six-month term, and opened a bank account at a local credit union on September 24, 2009; Victoria obtained employment at a New York Walmart and paid New York state taxes for the time she worked there in 2009. Affidavit of Bradley Brinkman at ¶¶ 30, 31, 33 & Exhs. E, G, H, J; Affidavit of Victoria Brinkman at ¶ 11.  Plaintiffs did not obtain New York driver's licenses or register to vote in the state of New York; they each kept their California driver's licenses.  In New York, plaintiffs made several inquiries about renting or buying property but did not sign a lease or live anywhere except Victoria's parents' trailer. Hunt Decl., Exh. 4 (Deposition of Victoria Brinkman) & Exh. 5 (Brinkman Emails).

Plaintiffs filed suit against defendants in California Superior Court on November 19, 2009. On November 18, 2009, Bradley was accepted to Columbus State Community College in Ohio, where he had applied online the day before.  Bradley's parents had moved from California to Ohio in September 2009, and plaintiffs signed a one-year residential lease agreement for an Ohio property on December 3, 2009. Hunt Decl., Exh. 7 (Drayton LLC Rental Agreement).  Plaintiffs moved to Ohio on December 5, 2009 and continue to reside in the state while Bradley attends classes at Columbus State Community College, having left some possessions in storage in Victoria's parents' shed. Hunt Decl., Exh. 3 (Deposition of Bradley Brinkman) at 7-9.  Plaintiffs obtained Ohio driver's

<2>
Case 3:11-cv-00621-MO    Document 33    Filed 03/10/11    Page 4 of 11
</2>

licenses, registered to vote in the state, and Bradley purchased and registered a motorcycle in Ohio. Hunt Decl., Exh. 3 (Deposition of Bradley Brinkman) at 6-7; Hunt Decl., Exh. 4 (Deposition of Victoria Brinkman) at 28-32; Opp. at 10:13.

Defendants are corporations with their main place of business in New York, which makes them New York citizens for diversity jurisdiction purposes. Defendants manufacture aircraft and aircraft parts, including the heater kit that was installed in the helicopter Bradley was piloting when the accident occurred. Defendants removed this case to federal court on October 12, 2010 after conducting a private investigation that gave them reason to believe that diversity jurisdiction existed. *See* Docket No. 1, Notice of Removal. Defendants then filed their motion to transfer the action to the District of Oregon on October 28, 2010. *See* Docket No. 9, Motion to Transfer to United States District Court for the District of Oregon. Plaintiffs moved to remand the action to state court on November 12, 2010, and defendants filed their opposition to the motion on February 7, 2011. The court stayed defendants' motion to transfer pending the resolution of plaintiff's motion to remand. *See* Docket No. 14, Order Granting Plaintiff's Motion to Continue Briefing and Hearing Schedules Pending Defendant's Venue Motions. Defendants deposed Bradley Brinkman regarding the issue of domicile on January 11, 2011, Victoria Brinkman on January 12, 2011, and Bradley's mother, Sally Brinkman, on January 11, 2011. Hunt Decl., Exhs. 3, 4, 9.

LEGAL STANDARD

Federal district courts are vested with original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). A person's state citizenship is determined by her state of domicile, not her state of residence. A person is domiciled in a location "where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely." *Lew v. Moss*, 797 F.2d 747, 749-750 (9th Cir. 1986) (*quoting Owens v. Huntling*, 115 F.3d 814, 819 (9th Cir. 1940)) (internal quotation marks omitted). "Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent

4

abode, though, to be sure, domicile often hangs on the slender thread of intent alone." *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957).

There are a number of factors courts use to determine a person's state of domicile, including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. None of these factors alone is controlling. *Lew*, 797 F.2d, 750. Courts evaluate domicile in terms of "objective facts," and "statements of intent are entitled to little weight when in conflict with facts." *Lew*, 797 F.2d, 750 (*quoting Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985) (internal quotation marks omitted). "[T]he actual fact of residence and a real intention of remaining there, as disclosed by [a party's] entire course of conduct, are the controlling factors in ascertaining his domicile." *Freeman*, 754 F.2d at 555-56.

"A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Lew*, 797 F.2d 750. There is no minimum period of residency required for a change in citizenship. *See Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698 (1st Cir. 1979) (*citing Morris v. Gilmer*, 129 U.S. 315, 328 (1889)). In order to affect a change in domicile, a party must have an intention to make the new state home and have no present intention of going elsewhere, even if he does not intend to remain permanently at the new domicile. *Gilbert v. David*, 235 U.S. 561, 569 (1915); *see also, e.g.*, *Holmes v. Sopuch*, 639 F.2d 431 (8th Cir. 1981). A person does not lose their old domicile until a new one is acquired. *Barber v. Varleta*, 199 F.2d 419, 423 (9th Cir. 1952).

A person's state of domicile for purposes of diversity is determined as of the time the action is filed. Subsequent events, such as a party's change of domicile, will ordinarily not affect whether a district court has original jurisdiction. *Freeport-McMoRan, Inc. v. K N Energy,* Inc., 498 U.S. 426 (1991); *Smith v. Sperling*, 354 U.S. 91 (1957); *see also Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980); *Lew*, 797 F.2d 750.

DISCUSSION

I.  Plaintiff's Motion to Remand

The party asserting diversity jurisdiction bears the burden of proof to demonstrate the citizenship of the parties. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-858 (9th Cir. 2001); *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 819 (9th Cir. 1961); *Lew*, 797 F.2d at 751. However, the presumption is in favor of an established domicile as against a newly acquired one. *See Lew*, 797 F.2d at 751 (citing authorities). The potential conflict between these two principles, as in this case, is "resolved by resort to a third, well-established principle. The 'burden' in a civil case involves not one but *two* elements: the burden of going forward with proof (the burden of 'production') and the burden of persuading the trier of fact (the burden of 'proof')." *Id.* (emphasis in original). In this case, defendants, who removed this action to federal court, bear the burden of proof in demonstrating diversity of citizenship. Plaintiffs, on the other hand, bear only the burden of producing enough evidence to substantiate their assertion of a change in domicile to withstand a motion for "directed verdict." *See id.* That standard requires a directed verdict if the evidence permits only one reasonable conclusion. A directed verdict is not proper if there is substantial evidence to support a verdict for the non-moving party and draw all reasonable inferences in favor of that party. *Shakey's, Inc. v. Covalt*, 704 F.2d 426, 430 (9th Cir. 1983). Here, the evidence permits only one reasonable conclusion: plaintiffs did not establish New York as their new domicile.

Although plaintiffs were undoubtedly residing in New York at the relevant time, they did not sufficiently manifest an intention to remain in that location indefinitely. While a domicile is established the moment that the physical presence in a discrete location and the intent to remain there coincide, the court must look to independently verifiable manifestations of intent beyond the post-hoc statements by plaintiffs. *See Freeman*, 754 F.2d at 555-56. Plaintiffs testified that they possessed the intent to remain in New York permanently at the time they relocated. However, reference to the factors enumerated in *Lew* shows that at best, plaintiffs' plans were amorphous and uncertain. While remaining in New York "indefinitely" was a possibility, it was only one of several;

6

the evidence does not reflect the required "intention to make a certain definite place [plaintiffs'] permanent abode." *Weible*, 244 F.2d at 163. Plaintiffs' "entire course of conduct," as detailed by the *Lew* factors, discloses no "real intention" to establish New York as their new domicile. *Freeman*, 754 F.2d at 555-56.

Although some of the *Lew* factors do not strongly support a finding of diversity, plaintiffs have produced no evidence that affirmatively shows that they ever possessed the requisite intent to make New York their domicile. Plaintiffs do have a local New York credit union account, which they opened shortly after moving to the state.[1] They claim that they continue to use the account, although there was no activity listed on their October 2010 bank statement and just over sixty dollars were in the account at that time. Victoria held a job at a New York Walmart and paid state income taxes for the weeks she worked there in 2009. However, Bradley was not employed in New York and plaintiffs provided no evidence that he was seriously searching for employment or educational opportunities in the state. In addition, plaintiffs purchased and registered a car in New York on November 16, 2009. This fact does not weigh in favor of establishing their domicile in New York, however, because plaintiffs also purchased and registered a motorcycle in Ohio shortly after moving there. Plaintiffs did not show that they were members of any unions or organizations in New York that might weigh in favor of a finding that they had established their domicile there. Lastly, the locations of plaintiffs' spouse and family does not reveal evidence of domicile. Plaintiffs lived and moved together, first in New York, then California, briefly back to New York, and finally Ohio. In each location, plaintiffs lived with or near their respective families, so this factor gives no clarity to the domicile inquiry.

On balance, the *Lew* factors weigh substantially against a finding that plaintiffs ever changed their domicile from California to New York. Plaintiffs currently reside in Ohio, not New York. While plaintiffs' subsequent move to Ohio would not affect the existence of diversity jurisdiction since the relevant time period is the date of filing, it does evince the continuing transient nature of plaintiffs' living arrangements. Plaintiffs planned their relocation to Ohio within days of filing suit against defendants and less than three months after first arriving in New York. Plaintiffs would

have had to have established their domicile in New York during a period when they lived there with no intention to leave, a period of time for which there is little evidentiary support.

Both plaintiffs are registered to vote in Ohio. Neither registered to vote in New York while they lived there at the end of 2009, although Victoria was previously registered to vote in New York before she moved with Bradley to California in 2007. In contrast, both Bradley and Victoria changed their voting registration from California to Ohio, Bradley in December 2009 or January 2010 and Victoria in June 2010. While Bradley contends that his voter registration only changed as a result of obtaining an Ohio driver's license, the fact remains that neither plaintiff registered to vote in New York from the time they relocated there in 2009 to the present. Likewise, both plaintiffs currently have Ohio driver's licenses, which they obtained shortly after arriving in Ohio. Neither attempted to obtain a New York license during the period they claim they established domicile there, and directly surrendered their California licenses in exchange for the Ohio licenses.

Furthermore, plaintiffs do not own or rent any real property in New York. They stayed temporarily on Victoria's parents' property and received their mail at a post office box. They have not alleged that they know of a "certain definite place" in New York to make their "permanent abode." *Weible*, 244 F.2d at 163. Plaintiffs made some inquiries about renting houses and purchasing a trailer in New York from mid-September 2009 to mid-November 2009. Hunt Decl., Exh. 5 (Brinkman Emails) & Exh. 4 (Victoria Brinkman Deposition) at 17-34. However, there is evidence of only one instance where plaintiffs viewed the rental property, and plaintiffs' application was refused because the property manager did not think they were able to commit to a lease based on their statements of uncertainty during the application process. In contrast, Bradley obtained a lease and moved his family into their rented duplex in Ohio in a matter of days. Hunt Decl., Exh 5 (Brinkman Emails) & Exh. 7 (Drayton LLC Rental Agreement). Plaintiffs have left some personal property in Victoria's parents' shed in LaFargeville, but that is the only property located in New York associated with plaintiffs.

Plaintiffs have produced subjective statements of intent to make New York their domicile, but only conflicting or contrary evidence to support that claim. Their whole course of conduct

8

reveals at best an uncertain or temporary set of plans that included an indefinite stay in New York only as one of several possibilities. Plaintiffs therefore fail to overcome the presumption against newly established domiciles, as they failed to show that they had ever established their domicile in New York. Diversity jurisdiction therefore exists and plaintiffs' motion to remand is denied.

II.  Defendant's Motion to Transfer to the District of Oregon

Defendants filed a motion to transfer this action to the District of Oregon on October 28, 2010. The motion was stayed on November 10, 2010 pending the outcome of plaintiffs' motion to remand. The briefing on defendants' motion to transfer has not been completed. However, based on the instant denial of plaintiffs' motion to remand, the court concludes that defendants' motion to transfer should be granted. Under 28 U.S.C. § 1404, a district court may transfer a civil action to another district where it might have been brought if it serves the convenience of parties and witnesses and the interest of justice. The considerations that should be used in determining whether to transfer a case in the Ninth Circuit include: 1) plaintiff's initial choice of forum, 2) convenience of the witnesses, 3) convenience of the parties, 4) where the events took place and the relative ease of access to sources of proof, 5) all other practical considerations that make the trial of a case easy, expeditious, and inexpensive. *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Transferring this action to the District of Oregon would serve the interest of justice and the convenience of the parties and witnesses. All the events giving rise to this action occurred in Oregon; witnesses to the accident and investigation are all in Oregon; the helicopter manufactured by defendants was based in Oregon; plaintiff Bradley Brinkman received medical treatment in Oregon; plaintiffs have filed a separate lawsuit against the flight school in Oregon state court; and all parties to both lawsuits have a strong connection to Oregon, including plaintiffs, who were residents of Oregon at the time of the accident. In contrast, the only apparent connection to California in this action is that plaintiffs were citizens, but not residents, of the state when the accident occurred.

9

The court will entertain no more argument or briefing on plaintiffs' motion to remand. However, within 30 days of the filing of this order, plaintiffs may show cause as to why the court should not transfer this action to the District of Oregon.

CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is DENIED.

IT IS SO ORDERED.

Dated: March 9, 2011

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# **ENDNOTES**

1.  The letter from Northern Federal Credit Union verifying that the Brinkmans had an account there, dated November 5, 2010, states that the account was opened on September 24, 2010. From statements made in plaintiffs' moving papers and analysis of the relevant timeframe, the court will assume that the date was written in error and that the Brinkmans opened the account on September 24, 2009, soon after moving to New York.