IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BRADLEY BRINKMAN, et al.**,

    Plaintiffs,

    v.

**SCHWEIZER AIRCRAFT CORPORATION, et al.**,

    Defendants.

No. 3:11-cv-00621-MO

OPINION AND ORDER

**MOSMAN, J.**,

This action arises from a November 21, 2007, helicopter crash in Oregon. Bradley and Victoria Brinkman sued Schweizer Aircraft Corporation and Schweizer Holdings, Inc. (collectively "Schweizer") based on injuries Mr. Brinkman sustained in the crash. Schweizer moved for summary judgment [44], arguing that Oregon's statute of repose bars this lawsuit. I divided the briefing first to determine whether Oregon's statute of repose applies under governing choice of law rules. I find that it does and direct briefing on whether plaintiffs' claims nevertheless survive defendants' motion for summary judgment.

1 – OPINION AND ORDER

**BACKGROUND**

Plaintiffs allege Mr. Brinkman was flying a Schweizer 269C helicopter when it crashed near Newburg, Oregon on November 21, 2007. He was a student pilot at the time, flying the helicopter as part of a nine-month pilot school in Oregon. The helicopter was designed and manufactured in New York by Schweizer Aircraft Corporation, which is a Delaware corporation with its principal place of business in New York. The other named defendant, Schweizer Holdings, Inc., is a New York corporation with its principal place of business in New York.

The Brinkmans lived in California before the accident. Their plan was to live in Oregon for the duration of the flight school and then move back to California. They returned to California soon after the accident and then, in September of 2009, moved to New York. On November 19, 2009, the Brinkmans filed this lawsuit in the Superior Court of the State of California, County of San Francisco. They allege the helicopter was defectively designed and manufactured, that warnings for it were inadequate, and that Schweizer misrepresented the helicopter's safety. Since filing their suit, the Brinkmans have lived in New York and Ohio.

Schweizer removed the case to the Northern District of California in October of 2010, based on diversity of citizenship. At defendants' request, the court then transferred the case to this district under 28 U.S.C. § 1404(a), finding a transfer to be in the interests of justice and convenience for the parties and witnesses. (Memo & Order [36] 2). Defendants then moved for summary judgment based on Oregon's statute of repose, which provides that a "product liability civil action" must be brought within eight years of the date the product at issue was "first purchased for use or consumption." Or. Rev. Stat. § 30.905(1)(2008).[1] The issue today is which state's statute of repose applies to this case.

---

[1] Amendments in 2009 lengthened the general repose period to ten years and added that, where the product at issue was manufactured outside of Oregon, "the statute of repose for an equivalent civil action in the state in which the

**DISCUSSION**

The parties first dispute which state's choice of law rules control: plaintiffs say California, where this case was originally filed; defendants say Oregon, where the case is now. As explained below, California's "governmental interest" test controls. Under that test, plaintiffs argue that Oregon's statute of repose conflicts with the law of California and New York because neither California nor New York has a statute of repose that would bar this suit. According to plaintiffs, the interest of either California or New York wins out against Oregon: California's interest is entitled to great weight because the Brinkmans were California citizens at the time of the accident; New York's interest is entitled to great weight because it is where the conduct at issue—the design and manufacture of the helicopter—occurred.

But the twist for plaintiffs is that New York and Oregon law are effectively the same because, if New York law applies, its "borrowing statute" borrows Oregon's statute of repose. Therefore, I must actually decide whether New York's interest is entitled to greater weight than the interest of California. I find that it is because New York is where the conduct at issue occurred and plaintiffs voluntarily exposed themselves to non-California law by attending a nine-month flight school in Oregon. Because that conclusion resolves the issue before me, I do not address whether Oregon law would apply in a straight "California versus Oregon" analysis.

**I.     Choice of the Choice of Law Rules**

Where, as here, a case is transferred based on principles of convenience under 28 U.S.C. § 1404(a), the choice of law rules of the transferor forum generally apply. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir. 1993). Defendants do not contest that point, but argue that the case could have been transferred under 28 U.S.C. § 1406 because venue was never

---

product was manufactured" controls if that state's statute of repose is longer than ten years. Or. Rev. Stat. § 30.905(2). These amendments became effective January 1, 2010, and are not retroactive.

3 – OPINION AND ORDER

proper in California under the general venue statute, 28 U.S.C. § 1391.  Therefore, they conclude, California's choice of law rules do not necessarily apply.

I reject this argument because venue was proper in the Northern District of California. Venue in a removed action is governed by the removal statute, 28 U.S.C. § 1441(a).  *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665 (1953) (holding that the general venue statute "has no application to this case because this is a removed action" and explaining "[s]ection 1441(a) expressly provides that the proper venue of a removed action is the district court of the United States for the district and division embracing the place where such action is pending") (quotation omitted).  Since this case was originally filed in state court in San Francisco, the Northern District of California was the proper venue. 28 U.S.C. § 1441(a).  Thus, the choice of law rules of California, the original forum, control.[2]

## II.     California's Choice of Law Analysis

The Supreme Court of California recently summarized its "governmental interest" choice of law test as follows:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

---

[2] Defendants do not claim that there was no personal jurisdiction in the California court.  *See Muldoon*, 1 F.3d at 967 (explaining that where a transfer is made "to cure a lack of personal jurisdiction in the transferor district" the law of the transferee district, including its choice of law rules, apply).

*McCann v. Foster Wheeler*, *LLC*, 225 P.3d 516, 527 (Cal. 2010) ("*McCann*") (quotation omitted). "[A] separate conflict of laws inquiry must be made with respect to each issue in the case." *Washington Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1081 (Cal. 2001).

*McCann* is particularly relevant here because the court synthesized prior California case law and applied its choice of law test to determine if a non-California statute of repose applied. The plaintiff there was a California resident when he learned that he may have been exposed to asbestos years earlier while installing a boiler at a factory in Oklahoma. 225 P.3d at 518. The boiler was custom-made in New York by the defendant, a New York company, and the defendant also oversaw its installation in Oklahoma. *Id*. The defendant argued that Oklahoma's 10-year statute of repose for actions based on improvements to real property applied. *Id*. at 521. The court ultimately agreed, finding a "true conflict" between California and Oklahoma law and concluding at step three that Oklahoma's interest prevailed, largely because the conduct at issue occurred there. *Id.* at 534, 537.

### III.    Application of California's "Governmental Interest" Test

#### A.  Step 1: The Conflict(s) of Laws

The first step is to determine "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Id*. at 527 (quotation omitted). The parties identified the "potentially affected jurisdictions" as Oregon (where the accident occurred), California (plaintiffs' state of citizenship at the time of the accident), and New York (where defendants are headquartered and where the helicopter at issue was manufactured and designed).[3] I conclude that, under New York's borrowing statute, New

---

[3] Plaintiffs initially suggested Washington, but the only connection they identified is that the helicopter was in Washington at some point on its way to Oregon. Plaintiffs apparently abandoned this argument and I reject it in any event. Plaintiffs have not identified what interest Washington might have in applying its laws to a suit involving non-residents, an Oregon accident, and New York defendants.

5 – OPINION AND ORDER

York and Oregon law do not differ, while California law is different from the law of both Oregon and New York.

> New York's "borrowing statute" provides:
>
> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y.C.P.L.R. Law § 202 (McKinney 2011).  While the statute is painfully opaque, the gist of it is, "[w]hen a non-resident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued."  *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999).  The purpose of the statute is "to secure for resident defendants the benefit of the shortest statute of limitations, [and] also to prevent forum shopping by non-resident plaintiffs."  *Appel v. Kidder, Peabody & Co.*, 628 F. Supp. 153, 155 (S.D.N.Y. 1986); *see also Barnett v. Johnson*, 839 F. Supp. 236, 239 (S.D.N.Y. 1993) (explaining that the "policy behind CPLR § 202 is to provide New York resident-defendants protection from a suit in New York that would have been barred by shorter statutory periods in other jurisdictions where nonresident plaintiffs could have sued").

Courts applying New York law have held that the borrowing statute "borrows" other states' statutes of repose, not just statutes of limitations.  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 11-cv-53236-MRP, 2011 WL 5067128, at *9 (C.D. Cal. Oct. 21, 2011); *Official Comm. of Asbestos Claimants v. Heyman*, 277 B.R. 20, 30 (S.D.N.Y. 2002); *Barnett*, 839 F. Supp. at 239; *Ledwith v. Sears Roebuck & Co., Inc.*, 231 A.D.2d 17, 24 (N.Y. App. Div. 1997) ("*Ledwith*").  In *Ledwith*, the New York Supreme Court, Appellate Division, specifically borrowed Oregon's statute of repose in a suit arising out of an injury that occurred in Oregon.  231 A.D.2d at 23–24.

The court reasoned that the plain language of the borrowing statute "embraces all the laws that serve to limit the time within which an action may be brought," and the statute therefore borrows statutes that might be classified as statutes of repose. *Id*. at 24.

Plaintiffs nevertheless argue that the borrowing statute should not be read to borrow statutes of repose and therefore New York and Oregon law are different. According to plaintiffs, where a statute of repose prevents a claim from ever "accruing," the borrowing statute is inapplicable since it only applies to actions "accruing" outside of New York. This argument was specifically rejected in *Ledwith* as contrary to the language of the borrowing statute and because this "interpretation of 'accrued' in CPLR § 202 would erode, and perhaps undermine, the statute's purpose, as a New York court never could borrow a foreign state's statute of limitations when that state's corresponding statute of repose bars the cause of action, a result contrary to the intent of CPLR § 202." *Id*. (quoting *Barnett*, 839 F. Supp. at 239).

Plaintiffs argue this part of *Ledwith* is no longer good law, based on *Tanges v. Heidelberg North America, Inc*., 710 N.E.2d 250 (N.Y. 1999)("*Tanges*"). In *Tanges*, the plaintiff was a New York resident and it was undisputed that Connecticut law applied. 710 N.E.2d at 251. The court conducted a New York choice of law analysis to determine whether that meant Connecticut's statute of repose applied. New York's procedural rules apply in New York even when another state's substantive law applies but the court held that Connecticut's statute of repose is substantive, not procedural. *Id*. at 255. The plaintiff in *Tanges*, a New York resident, argued that it did not matter if the Connecticut repose statute was substantive. *Id*. at 252. He relied on the "resident exception" to the borrowing statute, which is the statute's last clause and provides that out-of-state time bars will not apply in New York when the plaintiff is a New York resident.

7 – OPINION AND ORDER

*See id*. It is the court's resolution of that issue that the Brinkmans argue implicitly overturned *Ledwith*:

> For plaintiff to receive the alleged benefit of the resident exception in CPLR 202, a cause of action must first have accrued in his favor. Accrual is a substantive concept and, therefore, the question whether a cause of action accrued in plaintiff's favor reverts tautologically back to the inquiry whether [Connecticut's repose statute] is a part of Connecticut's substantive law. If it is substantive, Connecticut law also applies as to whether a cause of action ever accrued in plaintiff's favor. Thus, if [Connecticut's repose statute] is determinative of the accrual issue, it has the effect of preventing what might otherwise have been a cause of action from ever arising.

*Id*. (quotation omitted). This is all the discussion of the borrowing statute in *Tanges*. As plaintiffs acknowledge, "most of the *Tanges* decision is not pertinent" because it addressed whether a statute of repose is substantive or procedural. (Pls.' Supp. Br. [79] 4).

Plaintiffs do not and cannot claim that *Tanges* is on point here. *Tanges* only held that, where a different state's substantive law applies, that state's laws determine whether a cause of action "accrued" for purposes of the resident exception. It did not address what happens where New York substantive law is applied. Nor did it address what happens where the applicability of the general borrowing principle is at issue, rather than the resident exception. For several reasons, I reject plaintiffs' suggestion that I nevertheless conclude *Tanges* controls this case.

First, the authority plaintiffs cite in support of their interpretation is not convincing. Plaintiffs cite one unpublished New York trial court decision, which noted without any analysis or explanation that, under *Tanges,* the New York borrowing statute does not apply to statutes of repose. *Warin v. Wildenstein & Co., Inc.*, No. 11543/99, 2001 WL 1117493, at *7 (N.Y. Sup. Ct. Sept. 4, 2001).[4] The only decision to address this issue with any analysis, based on my own research and the parties' briefing, rejected plaintiff's argument. *Allstate Ins. Co.*, 2011 WL

---

[4] The only other authority plaintiffs cite on this point is a New York practice series (Pls.' Supp. Br. [79] 10) but that source also provides no analysis and at least one other practice series indicates *Ledwith* remains good law. 2A Carmody-Wait 2d N.Y. Prac. § 13:44 (2011).

8 – OPINION AND ORDER

5067128, at *9 (concluding *Ledwith* remains good law in light of *Tanges* and that New York's borrowing statute borrows statutes of repose).

Second, the language from *Tanges* suggests it should not be read as plaintiffs propose. *Tanges* held that a cause of action must have accrued "[f]or plaintiff to receive the alleged benefit of the resident exception in CPLR 202." *Id*. The fact that the court spoke of the *exception* to the general borrowing principle— rather than simply holding the borrowing statute would not be relevant at all if the cause of action had never "accrued" in Connecticut—cuts against plaintiffs' reading. Third, I agree with the analysis in *Ledwith* and *Allstate Insurance Company*, 2011 WL 5067128, that the language of the borrowing statute itself draws no distinction between statutes of repose and statutes of limitations. Rather, it applies whenever a suit would be barred under "the time limited by the laws" of the other state. N.Y.C.P.L.R. Law § 202 (McKinney 2011). The reference to "laws," without exception, indicates the statute should not be read to only borrow particular laws. This issue was not addressed by *Tanges*.

Fourth, as *Ledwith* explained, reading the borrowing statute as plaintiffs propose would conflict with the purpose of the borrowing statute in that some statutes of limitations might also no longer be borrowed. If another state's statute of repose would prevent a suit from "accruing" in that state, and therefore the borrowing statute simply does not apply, the borrowing statute would not then borrow that state's statutes of limitation. There is no dispute that the borrowing statute was at least intended to borrow statutes of limitations, so this reading would conflict with the statute's purpose. This issue was not presented by the facts in *Tanges* or addressed in the court's brief discussion.

9 – OPINION AND ORDER

Thus, I find that *Ledwith*'s analysis remains good law and that if New York law applies, Oregon's statute of repose applies as well.[5]  At step one I conclude that California law is different from Oregon and New York law because only California would not apply Oregon's statute of repose.  Next, I analyze whether New York's interests "truly conflict" with California's and, if so, which state's interests control.[6]

B.  Step 2: The "True" Conflict

As step two, I examine "each jurisdiction's interest in the application of its own law in the circumstances of the particular case to determine whether a true conflict exists."  *McCann*, 225 P.3d at 529 (quotation omitted).  A "true conflict" does not exist if only one state "has a real and legitimate interest in having its [law] applied under the circumstances."  *Id*. at 531–32.

California has a real and legitimate interest in applying its law here.  The *McCann* court discussed with approval prior California case law involving a California resident injured in an Alabama automobile accident.  225 P.3d at 532 (citing *Castro v. Budget Rent-A-Car Sys. Inc*., 65 Cal. Rptr. 3d 430 (Cal. Ct. App. 2007)).  California's interest there was in applying its law "to ensure that California residents injured in traffic accidents in other states would be compensated for their injuries and not become dependent on the resources of California for necessary medical, disability, and unemployment benefits."  225 P.3d at 536 (quoting *Castro*, 65 Cal. Rptr. 3d at 443); *see also id*. at 533 (concluding California had an interest "in having a statutory provision that affords a remedy for . . . an injured person . . . applied when as here, the injured person . . . is a California resident . . . even when the injury-producing conduct occurs outside California").

---

[5] Plaintiffs do not assert they might qualify as New York residents for purposes of the "resident exception."  Nor do they dispute that, assuming *Ledwith'*s analysis remains good law, their cause of action "accrued" in Oregon for purposes of the borrowing statute.

[6] As mentioned above, because I conclude that New York's interest survives step two and prevails at step three, I will not address how Oregon would fare in a separate "Oregon versus California" analysis.  For this reason, I need not address plaintiffs' argument that the amendments to Oregon's statute of repose demonstrate that Oregon essentially has no interest in applying its law here.

Here, California's interest parallels the interest identified in *McCann*. California has an interest in affording California residents a remedy so they will not become dependent on California's resources, despite the fact that they were injured in a different state by out-of-state conduct.[7]

*McCann* also instructs that New York, as the place of the conduct and defendants' place of business, has a real and legitimate interest in applying its law. In *McCann*, the court held that Oklahoma, the state where the conduct occurred, had a significant interest in applying its laws even though the defendant was headquartered in New York. The court explained:

> When a state adopts a rule of law limiting liability for commercial activity conducted within the state in order to provide what the state perceives is fair treatment to, and an appropriate incentive for, business enterprises, we believe that the state ordinarily has an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state.

*McCann*, 225 P.3d at 530.

In this case, Schweizer's principal place of business is New York and it is undisputed that the conduct at issue here, the design and manufacture of the helicopter, occurred there.[8] Thus, New York's interest in applying its borrowing statute, which operates as a "law limiting liability for commercial activity within the state" in this case, is at least as "real" and "legitimate" as Oklahoma's interest was in *McCann*. *See also Barnett*, 839 F. Supp. at 239 (explaining that the "policy behind CPLR § 202 is to provide New York resident-defendants protection from a suit in

---

[7] I note that concluding this interest might actually be "impaired" arguably ignores the facts of this case. The Brinkmans left California before they filed this suit (and have apparently not lived in California since) so there may be little risk of them becoming dependent on California's resources if they are not afforded a remedy in this suit. Nevertheless, California choice of law decisions suggest that in a case like this the time period for determining the relevant interests is the time of the accident. *See Reich v. Purcell*, 432 P.2d 727, 730 (Cal. 1967) (holding that a plaintiff's "residence and domicile at the time of the accident are the relevant residence and domicile" because a different holding might encourage forum shopping). I do not address this issue further, however, because I conclude that even assuming California has this legitimate interest, New York law applies.

[8] While plaintiffs do not dispute this point, I note that Schweizer's advertising may also be at issue to some degree, since plaintiffs allege Schweizer failed to warn of the helicopter's risk. (Compl. [1] ¶¶ 23–27). That advertising might have occurred anywhere in the world. This fact issue does not matter under *McCann*. *See* 225 P.3d at 531. (noting that Oklahoma's "interest is not diminished by the circumstance that *some* of Foster Wheeler's activities occurred outside of Oklahoma").

11 – OPINION AND ORDER

New York that would have been barred by shorter statutory periods in other jurisdictions where nonresident plaintiffs could have sued").

    C.  <u>Step 3: Weighing the Relevant Interests</u>

At the third step, a court "must carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 225 P.3d at 534 (quotation and alteration omitted). The task is "to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances." *Id*.

Again, *McCann* is instructive. There, the court held that the lawmaking authority should be allocated to Oklahoma and explained:

> Although California no longer follows the old choice-of-law rule that generally called for application of the law of the jurisdiction in which a defendant's allegedly tortious conduct occurred *without regard to the nature of the issue that was before the court*, California choice-of-law cases nonetheless continue to recognize that *a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders,* and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.

*Id.* at 534 (second emphasis added). The court added that applying California law "would undermine Oklahoma's interest in establishing a reliable rule of law governing potential liability for conduct undertaken in Oklahoma." *Id*.

On the other hand, California had a relatively modest interest:

> [O]ur past choice-of-law decisions teach that California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortuous conduct occurred in another state is less than its interest when the defendant's conduct occurred in California. As we shall see, in a number of choice-of-law settings, California decisions have adopted a restrained view of the scope or reach of California law with regard to

>the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction.

*Id*. at 535. The court also reasoned that where a California resident was in a different state when injured, California has less interest in applying its laws because the plaintiff "should not expect to subject defendant to a financial hazard that [the other state's] law had not created." *Id*. (quotation and alteration omitted).

This analysis from *McCann* tips the scale in New York's favor. California's interest is entitled to relatively little weight because the conduct and accident at issue did not occur in California, and California law therefore adopts a "restrained view" of California's interest. Moreover, plaintiffs opted to pursue a nine-month flight school in Oregon and therefore they should not have expected to subject defendants to financial hazards arising out of that school that may not exist there. This consideration is particularly relevant because plaintiffs went to Oregon to engage in the very activity that led to this lawsuit.

On the other hand, New York has the predominant interest in "regulating conduct that occurs within its borders, and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *McCann*, 225 P.3d at 534. One such limitation is that a suit brought by a non-resident of New York will be precluded if the suit would be time-barred where it accrued. In fact, New York's interest is even stronger here than Oklahoma's interest in *McCann* because not only did the conduct occur in New York in this case, but the defendants here are also both headquartered there. New York should therefore be allocated the "predominant" lawmaking authority over these defendants' New York conduct.

13 – OPINION AND ORDER

## CONCLUSION

As a choice of law question, I find that Oregon's statute of repose applies to this dispute. New York law would apply that statute and New York's interest is entitled to greater weight than the interest of California under the circumstances of this case. The next question, yet to be briefed, is whether that conclusion means defendants are entitled to summary judgment. Plaintiffs' response brief on that point is due January 11, 2012. Defendants' reply brief in support of their motion for summary judgment is due January 27, 2012.

IT IS SO ORDERED.

DATED this   15th   day of December, 2011.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

14 – OPINION AND ORDER